**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**YITZCHOK LEBOVITS et al.,**

            **Plaintiffs,**

           v.

**ANDREW M. CUOMO[1] et al.,**

            **Defendants.**
_____

**1:20-cv-1284
(GLS/DJS)**

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:**<br>The Becket Fund for Religious Liberty<br>1919 Pennsylvania Ave. NW<br>Ste 400<br>Washington, DC 20006 | ERIC C. RASSBACH, ESQ.<br>MARK RIENZI, ESQ.<br>DANIEL CHEN, ESQ.<br>JOSEPH DAVIS, ESQ.<br>WILLIAM HAUN, ESQ. |
| Josh Blackman LLC<br>1303 San Jacinto Street<br>Houston, TX 77002 | JOSHUA BLACKMAN, ESQ. |
| **FOR THE DEFENDANTS:**<br>*Andrew M. Cuomo, Letitia James,*<br>*Howard A. Zucker, Kathy Hochul &*<br>*Mary T. Bassett*<br>New York State Attorney General | CHRISTOPHER LIBERATI- |

---

[1] Since commencement of this action, Kathy Hochul succeeded Andrew M. Cuomo as Governor of the State of New York, Eric L. Adams succeeded Bill de Blasio as Mayor of the City of New York, and Mary T. Bassett succeed Howard A. Zucker as Commissioner of the New York State Department of Health. Accordingly, Hochul, Adams, and Bassett are automatically substituted insofar as Cuomo, de Blasio, and Zucker were sued in their official capacities. *See* Fed. R. Civ. P. 25(d). Where appropriate, references throughout to the originally named defendants are to be read to encompass the substituted parties.

| | |
|---|---|
| The Capitol<br>Albany, NY 12224 | CONANT, ESQ. |

*Bill de Blasio, New York City*
*Department of Health and Mental*
*Hygiene, City of New York &*
*Eric L. Adams*

| | |
|---|---|
| New York City Law Department<br>100 Church Street<br>New York, NY 10007 | MELANIE SADOK, ESQ.<br>HILARY M. MELZER, ESQ. |

**Gary L. Sharpe**
**Senior District Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiffs Yitzchok Lebovits and Chana Shapiro-Lebovits, individually and on behalf of their daughters E.L. and A.L., and Bais Yaakov Ateres Miriam (BYAM) bring this action against defendants Andrew M. Cuomo, individually and in his official capacity as Governor of the State of New York, Letitia James, in her official capacity as Attorney General of the State of New York, Howard A. Zucker, in his official capacity as Commissioner of the New York State Department of Health (hereinafter, collectively referred to as "State Defendants"), Bill de Blasio, individually and in his official capacity as Mayor of the City of New York, the New York City Department of Health and Mental Hygiene (DHMH), and the City of New York

2

(hereinafter, collectively referred to as "City Defendants"). (Compl., Dkt. No. 1.) Plaintiffs allege claims pursuant to 42 U.S.C. § 1983, seeking declaratory relief, damages, and attorney's fees. (*Id.*) Pending are City Defendants' motion to dismiss the complaint, (Dkt. No. 51), and State Defendants' motion to dismiss the complaint, (Dkt. No. 52).

For the reasons that follow, City Defendants' motion is granted, and State Defendants' motion is granted in part and denied in part, as described below.

## II. **Background**[2]

Lebovits and Shapiro-Lebovits are Orthodox Jews, residents of Inwood, New York, and parents to E.L. and A.L. (Compl. ¶ 11.) BYAM is a New York religious corporation that operates a religious school for Orthodox Jewish girls located in Far Rockaway, New York, which is attended by E.L. and A.L. (*Id.* ¶¶ 11-12.)

On October 4, 2020, while BYAM was closed during the holiday of Sukkot, de Blasio announced a plan which would prevent the reopening of BYAM after the holiday on October 13, 2020 (hereinafter "the ZIP Code

---

[2] The facts are drawn from plaintiffs' complaint, (Dkt. No. 1), presented in the light most favorable to them, and from facts of which the court may properly take judicial notice. *See* Fed. R. Evid. 201.

Plan"), because BYAM was located in a ZIP code identified as a COVID-19 "hotspot". (*Id.* ¶¶ 95-97.) The ZIP Code Plan would also close "nonessential" businesses, and require restaurants to serve takeout only in these "hotspot" ZIP codes. (*Id.*)

However, Cuomo refused to approve the ZIP Code Plan, "fault[ing] [it] for relying on ZIP codes, stating that 'targeting by [ZIP] codes is imperfect' because 'neighborhoods and communities aren't organized by [ZIP] codes.'" (*Id.* ¶¶ 100-01.) Instead, on October 6, 2020, Cuomo announced the "Cluster Action Initiative," which "supersed[ed] Mayor de Blasio's [ZIP Code plan]." (*Id.* ¶ 110.) The Cluster Action Initiative identified at-risk areas by "cluster," rather than by ZIP code, and divided those areas into "red," "orange," and "yellow" zones, with each zone being subjected to different levels of COVID-19-related restrictions. (*Id.* ¶¶ 111-12.) Of note, the Cluster Action Initiative "close[d] altogether any schools falling within red or orange zones." (*Id.* ¶ 112.)

Cuomo formalized the Cluster Action Initiative by issuing Executive Order 202.68 (hereinafter "the Order"), which made the Cluster Action

4

Initiative restrictions "effective immediately."[3]  (*Id.* ¶ 132.)  On October 7, 2020, de Blasio announced that the Order would be enforced in New York City beginning on October 8, 2020.  (Compl. ¶ 133.)  BYAM was located in a red zone and was, thus, "shuttered entirely."  (*Id.* ¶ 142.)

In the complaint, plaintiffs sought, among other things, declaratory relief allowing BYAM to reopen on October 27, 2020.  (*Id.* ¶ 144.)  Since the filing of the complaint, there have been a multitude of developments regarding New York State's approach to the COVID-19 pandemic, which have allowed BYAM to open.[4]  On December 4, 2020, schools within red and yellow zones were permitted to open, subject to COVID-19 testing requirements, (Executive Order [A. Cuomo] No. 202.79 [9 NYCRR 8.202.79]), and, on May 6, 2021, Cuomo terminated the Cluster Action Initiative, (Executive Order [A. Cuomo] No. 202.106 [9 NYCRR 8.202.106] ("[T]he following directive[] shall no longer be in effect: The [Cluster Action

---

[3]  "The . . . [Cluster Action Initiative] shall be effective immediately, and at such time as notice is provided to such affected areas, may be enforced and shall be enforced no later than Friday, October 9, 2020, as determined by the county in which the red zones, orange zones, and yellow zones are located."  (Executive Order [A. Cuomo] No. 202.68 [9 NYCRR 8.202.68]).

[4]  Although not pertinent to the determination of these motions, based on other filings in this case, it appears that BYAM was given permission to reopen on October 26, 2020, (Dkt. No. 20), and, on November 16, 2020, plaintiffs withdrew their application for a temporary restraining order given that "[d]efendants agreed to allow [BYAM] to reopen," (Dkt. No. 45).

5

Initiative].")).

Further, Cuomo's emergency executive powers have been terminated, (2021 NY Senate Bill 5357, A5967), and, on June 25, 2021, the COVID-19 state of emergency ended, (Executive Order [A. Cuomo] No. 210 [9 NYCRR 8.210]).  Finally, on August 10, 2021, following an independent investigation conducted by the New York State Attorney General's Office, and in the face of a multitude of sexual assault and sexual harassment allegations, Cuomo announced his resignation as Governor, effective August 24, 2021.

## III.  **Standard of Review**

The standard of review under Fed. R. Civ. P. 12(b)(6) is well settled and will not be repeated here.  For a full discussion of the governing standard, the court refers the parties to its prior decision in *Ellis v. Cohen & Slamowitz, LLP*, 701 F. Supp. 2d 215, 218 (N.D.N.Y. 2010).  The standard of review under Fed. R. Civ. P. 12(b)(1) is similar, except that the court "may refer to evidence outside the pleadings," and "[a] plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citations omitted).

## IV. Discussion

In their motions to dismiss, both City Defendants and State Defendants seek dismissal of plaintiffs' requests for declaratory relief on mootness grounds. (Dkt. No. 51, Attach. 1 at 6-13; Dkt. No. 52, Attach. 1 at 11-14.) Further, City Defendants seek dismissal of plaintiffs' claims for damages, because de Blasio is entitled to qualified immunity, (Dkt. No. 51, Attach. 1 at 15-18), suing de Blasio, in his official capacity, and the DHMH is duplicative of suing the City of New York, (Dkt. No. 51, Attach. 1 at 13), and City Defendants were not responsible for plaintiffs' alleged harm, (Dkt. No. 51, Attach. 1 at 14-15, 18-19). State Defendants claim that any damages against Cuomo, James, and Zucker, in their official capacities, are barred by the Eleventh Amendment, (Dkt. No. 52, Attach. 1 at 14), and that any claims against Cuomo individually must be dismissed because he is entitled to legislative immunity, (Dkt. No. 52, Attach. 1 at 14-16).

### A.  Mootness

Plaintiffs seek a declaration "that [d]efendants must . . . cease discriminating against [p]laintiffs on the basis of their Orthodox Jewish faith and . . . permit [p]laintiffs to conduct in-person religious instruction." (Compl. at 32.) Defendants argue that the complaint must be dismissed on

7

mootness grounds, to the extent that it seeks the above relief, given subsequent developments related to New York's handling of the COVID-19 pandemic, including the revocation of the Order, and termination of Cuomo's emergency powers and the COVID-19 state of emergency. (Dkt. No. 51, Attach. 1 at 6-13; Dkt. No. 52, Attach. 1 at 11-14; Dkt. No. 67 at 3-5; Dkt. No. 69 at 2-5.)

Plaintiffs dispute this, claiming that, while BYAM is now open, a forced re-closure could reasonably be expected to occur, noting that "Governor [Hochul] has focused specifically on tightening COVID restrictions on schools and children," citing to her imposition of a mask mandate in schools; and because "the rise of . . . [a new] variant makes the risk that [d]efendants will swiftly revise the relevant restrictions and reimpose school closures all the more tangible." (Dkt. No. 70 at 2-3 (internal quotation marks omitted); Dkt. No. 68 at 2.)

"The voluntary cessation of allegedly illegal conduct usually will render a case moot if the defendant can demonstrate that (1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Lamar Adver. of Penn, LLC v. Town of Orchard*

8

*Park*, 356 F.3d 365, 375 (2d Cir. 2004) (internal quotation marks and citation omitted). "Generally, when a lawmaker withdraws an allegedly unconstitutional law, any plaintiff's request for an injunction against its application becomes moot." *Lewis v. Cuomo*, No. 20-CV-6316, 2021 WL 3163238, at *7 (W.D.N.Y. July 27, 2021) (citing *Campbell v. Greisberger*, 80 F.3d 703, 706 (2d Cir. 1996)). "[C]laims will not be found moot where the defendant's amendments [to the law] are merely superficial or the law, after amendment, suffers from similar infirmities as it did at the outset." *Lamar*, 356 F.3d at 378.

Given that, on December 4, 2020, schools within red and yellow zones were permitted to open, subject to COVID-19 testing requirements, (Executive Order [A. Cuomo] No. 202.79 [9 NYCRR 8.202.79]), and, on May 6, 2021, Cuomo terminated the entire Cluster Action Initiative by revoking the Order, (Executive Order [A. Cuomo] No. 202.106 [9 NYCRR 8.202.106] ("[T]he following directive[] shall no longer be in effect: The [Cluster Action Initiative].")), "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation," *Lamar*, 356 F.3d at 375. Put plainly, BYAM is now open.

Further, "there is no reasonable expectation that the alleged violation

will recur." *Lamar*, 356 F.3d at 375. Given the revocation or termination of the Governor's emergency powers and the COVID-19-related state of emergency, Governor Hochul is without the same unilateral authority that Cuomo had at the time he imposed the Cluster Action Initiative. Considering this, along with the current state of the COVID-19 pandemic, it is unlikely that BYAM will face a state-mandated school shut down again. *See Dark Storm Industries LLC v. Hochul*, No. 20-2725-cv, 2021 WL 4538640, at *1 (2d Cir. Oct. 5, 2021) (holding, where plaintiffs were disputing the mootness of their claims by arguing that COVID-19 "is a *sui generis* worldwide situation that has created a state of extreme flux and almost certainly will require varying responses by state executive branches," that "[p]laintiffs do not remain under a constant threat of . . . restrictions. Nor do recent developments suggest that they may recur . . . in fact, quite the opposite, as a recent increase in COVID-19 cases has prompted neither a renewed disaster emergency declaration nor an order closing businesses." (internal quotation marks and citations omitted)); *see also Conn. Citizens Defense League, Inc. v. Lamont*, 6 F.4th 439, 446 (2d Cir. 2021) ("Particularly in view of the mitigation measures that have become available to combat the spread of COVID-19, and the providential

infrequency of pandemics, [the alleged violation's reoccurrence] is speculative, even if [the Governor's authority to do so] were granted (which itself is a contingency)."); *Lewis*, 2021 WL 3163238, at *8 (W.D.N.Y. July 27, 2021) (denying injunctive relief as moot where "the challenged conduct . . .ceased" due to the termination of Cuomo's emergency powers, the end of the state of emergency, and the recision of the "allegedly unconstitutional statute and executive orders," and that because of the "revocation of the . . . Governor's expanded emergency powers by the . . . legislature, the Court finds that there is no reasonable expectation of a recurrence" (internal quotation marks and citation omitted)).  In light of the foregoing, plaintiffs' claims for declaratory relief are dismissed as moot.

## B.    City Defendants' Motion Regarding Damages

With respect to plaintiffs' claims seeking damages, City Defendants contend that the complaint lacks sufficient factual allegations establishing that they were involved in the alleged harm, because they were merely enforcing the Order, which was not drafted or issued by any of the City Defendants, and, thus, must be dismissed.[5]  (Dkt. No. 51, Attach. 1 at 14,

---

[5] City Defendants also claim de Blasio is entitled to qualified immunity, (Dkt. No. 51, Attach. 1 at 15-18), and that suing de Blasio, in his official capacity, and the DHMH, is duplicative of suing the City of New York, (Dkt. No. 51, Attach. 1 at 13).  As explained below,

11

18-19; Dkt. No. 57 at 6-9.)

Plaintiffs argue that, while City Defendants did not draft or issue the Order, the Order *authorized* them to enforce the Cluster Action Initiative, but did not *mandate* it, and, thus, they can be held liable for choosing to enforce it.  (Dkt. No. 55 at 30 ("[T]he City's enforcement actions against BYAM and other religious gatherings manifest its authority and discretion."))  Plaintiffs focus on the following language in support of their assertion that City Defendants had discretion in whether or not they chose to enforce the Order: "[The Cluster Action Initiative] may be enforced and shall be enforced . . . , *as determined by the county* in which the red zones, orange zones, and yellow zones are located."  (Dkt. No. 55 at 30.)  Plaintiffs further contend that de Blasio may be liable for damages stemming from the enforcement of the Order because "[b]y proposing the initial ZIP-code targeting effort [that] Governor Cuomo would refine, Mayor de Blasio certainly helped others violate the Constitution."  (Dkt. No. 55 at 31-32.)

"To sustain a § 1983 claim, the plaintiff must show that there was

---

because the complaint fails to sufficiently allege involvement in the alleged harm by City Defendants, the court need not reach these issues.

sufficient personal involvement in the alleged constitutional deprivations on the part of the defendants." *Zdziebloski v. Town of East Greenbush*, 336 F. Supp. 2d 194, 201-02 (N.D.N.Y. 2004) (citing *Moffitt v. Town of Brookfield*, 950 F.2d 880, 886 (2d Cir.1991)) (other citation omitted).  In order to hold a municipality liable within the meaning of § 1983, a plaintiff must establish that the municipality itself was somehow at fault. *See Oklahoma City v. Tuttle*, 471 U.S. 808, 810 (1985).

"Municipal liability may attach under § 1983 when a city policymaker takes action that violates an individual's constitutional rights." *Gronowski v. Spencer*, 424 F.3d 285, 296 (2d Cir. 2005).  Where a municipality is merely carrying out a state law, it may still be liable under § 1983 when it makes a "meaningful" and "conscious" *choice* to carry out that law.  *Vives v. City of New York*, 524 F.3d 346, 351, 353 (2d Cir. 2008); *see Dudek v. Nassau Cty. Sheriff's Dept.*, 991 F. Supp. 2d 402, 411 (E.D.N.Y. 2013). "Freedom to act is inherent in the concept of choice." *Vives*, 524 F.3d at 352 (internal quotation marks omitted).  "[A] municipality's 'decision' to fulfill a mandatory obligation does not constitute a 'choice.'" *Id.* at 353 n.4.

Here, City Defendants had no choice when it came to enforcing the Order.  In relevant part, the Order states:

13

> The above directive shall be effective immediately, and at such time as notice is provided to such affected areas, may be enforced and shall be enforced no later than Friday, October 9, 2020, as determined by the county in which the red zones, orange zones, and yellow zones are located.

(Executive Order [A. Cuomo] No. 202.68 [9 NYCRR 8.202.68]).  Further, the full text of the Order uses the word "shall" numerous times when directing how the Order is to be enforced.[6]  *Id.*  The Order mandated the implementation and enforcement of the Cluster Action Initiative, and was not simply recommending or authorizing it.  "[A]s determined by the county" simply means that the various counties will be responsible for enforcing the Order with their own employees and resources, rather than the State's.  Given that the Order mandated enforcement of the Cluster Action Initiative, City Defendants cannot be held liable under § 1983 for enforcing it.  *Vives*, 524 F.3d at 353 n.4 ("[A] municipality's 'decision' to fulfill a mandatory obligation does not constitute a 'choice.'").

  Finally, de Blasio may not be held liable for damages stemming from the enforcement of the Order simply because he "propos[ed] the initial

---

[6] For example: "The Department of Health shall determine areas in the State that require enhanced public health restrictions based upon cluster-based cases of COVID-19. . . ."; "Based upon the severity of the cluster, the [DHMH] shall adopt in most severe, or 'red zones,' the following mitigation measures. . . ." *Id.*

14

ZIP-code targeting effort [that] Governor Cuomo would refine." (Dkt. No. 55 at 31-32.) The fact that de Blasio previously proposed a regulation that was never adopted, and, in fact, was rejected by Cuomo is not enough to establish personal involvement for purposes of § 1983. *See Zdziebloski*, 336 F. Supp. 2d at 202 ("Involvement in discussions that lead to a decision is not personal involvement under § 1983."); *see also Schallop v. N.Y. State Dept. of Law*, 20 F. Supp. 2d 384, 392 (N.D.N.Y. 1998) ("[P]articipat[ing] in discussions leading to the decision on [plaintiff's] employment . . . fails to establish personal involvement under section 1983."). Given that enforcement of the Order by City Defendants was mandatory, and because de Blasio's proposal of the rejected Zip Code Plan cannot alone establish his personal involvement the in plaintiffs' alleged constitutional deprivations, City Defendants' motion to dismiss the claims against them for damages is granted.

**C.**     **State Defendants' Motion Regarding Damages**

State Defendants seek dismissal of the complaint insofar that it seeks damages against them in their official capacities, because such damages are barred by the Eleventh Amendment. (Dkt. No. 52, Attach. 1 at 14.) The court agrees. "The Eleventh Amendment . . . bars damages

15

claims brought against . . . individual state defendants in their official capacities." *Morabito v. New York*, 803 F. App'x 463, 465 (2d Cir. 2020) (citation omitted). Further, "[i]t is well settled that § 1983 does not override Eleventh Amendment immunity." *Id.* (citation omitted). Therefore, plaintiffs' claims seeking damages from Cuomo, James, and Zucker in their official capacities, are dismissed.

State Defendants seek dismissal of the damages claims against Cuomo in his individual capacity as well, claiming that he is entitled to legislative immunity. (Dkt. No. 52, Attach. 1 at 14-16; Dkt. No. 58 at 5-6.) In making this claim, they argue that the Order is legislative in form because the New York State Legislature delegated to Cuomo the authority "to declare a disaster emergency and to issue directives suspending and modifying the laws of the State." (Dkt. No. 52, Attach. 1 at 14-16.)

"Legislative immunity shields an official from liability if the act in question was undertaken in the sphere of legitimate legislative activity." *Almonte v. City of Long Beach*, 478 F.3d 100, 106 (2d Cir. 2007) (internal quotation marks and citation omitted). Legislative immunity can apply to "officials in the executive and judicial branches when they are acting in a legislative capacity." *State Emps. Bargaining Agent Coal. v. Rowland*, 494

16

F.3d 71, 82 (2d Cir. 2007) (internal quotation marks and citation omitted).

"A defendant is entitled to legislative immunity if the defendant (1) was acting in his or her 'legislative' capacity under the test articulated in *Bogan* [*v. Scott-Harris*, 523 U.S. 44 (1998)], and (2) the grant of the requested relief would enjoin the defendant in his or her performance of legislative functions." *Ass'n of Jewish Camp Operators v. Cuomo*, 470 F. Supp. 3d 197, 212 (N.D.N.Y. 2020). Courts apply a two-part test to determine whether a defendant's actions were taken within the "sphere of legitimate legislative activity." *Rowland*, 494 F.3d at 89 (quoting *Bogan*, 523 U.S. at 54). The first prong of the test is "whether the defendant's actions were legislative in form, *i.e.*, whether they were integral steps in the legislative process." *Jewish Camp*, 470 F. Supp. 3d at 312 (internal quotation marks and citation omitted); *see Rowland*, 494 F.3d at 90 (explaining that legislative in form means "passed by means of established legislative procedures" (citations omitted)). The second prong of the test is whether the defendant's "actions were legislative in *substance*, *i.e.*, whether the actions bore all the hallmarks of traditional legislation, including whether they reflected discretionary, policymaking decisions implicating the budgetary priorities of the government and the services the

17

government provides to its constituents." *Id.* (internal quotation marks and citation omitted).

Here, the Order is not legislative in form, as it was not "passed by means of established legislative procedures," *Rowland*, 494 F.3d at 90, but rather was unilaterally enacted by Cuomo, *see Jewish Camp*, 470 F. Supp. 3d at 213 ("By nature, executive orders are not legislative . . . [because] [t]he legislature plays no part in the drafting or passing [of] executive orders." (citation omitted)). State Defendants' argument that the Order was legislative in form because the New York State Legislature delegated their legislative authority to Cuomo is without merit, as there is "no reason why a defendant should be entitled to legislative immunity simply because the harm alleged originated, in some sense, with a legislative act." *Rowland*, 494 F.3d at 89 (citation omitted). Therefore, State Defendants' motion to dismiss is denied insofar as it seeks dismissal of plaintiffs' damages claims against Cuomo in his individual capacity.

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Kathy Hochul is substituted insofar as Cuomo was sued in his official capacity; and it is further

**ORDERED** that Eric L. Adams is substituted insofar as de Blasio was sued in his official capacity; and it is further

**ORDERED** that Mary T. Bassett is substituted insofar as Zucker was sued in his official capacity; and it is further

**ORDERED** that City Defendants' motion to dismiss (Dkt. No. 51) is **GRANTED**; and it is further

**ORDERED** that the Clerk terminate the following defendants: Bill de Blasio, Eric L. Adams, the New York City Department of Health and Mental Hygiene, and the City of New York; and it is further

**ORDERED** that State Defendants' motion to dismiss (Dkt. No. 52) is **GRANTED IN PART** and **DENIED IN PART** as follows:

**GRANTED** with respect to all claims against Hochul, James, Zucker, and Bassett; and

**DENIED** in all other respects; and it is further

**ORDERED** that plaintiffs' complaint may proceed only as to their damages claims as against Cuomo, in his individual capacity; and it is further

**ORDERED** that the Clerk terminate the following defendants: Kathy Hochul, Leticia James, Howard Zucker, and Mary T. Bassett; and it is

19

further

**ORDERED** that Cuomo shall respond to the complaint (Dkt. No. 1) within the time allotted by the Rules; and it is further

**ORDERED** that the parties shall contact Magistrate Judge Daniel J. Stewart to schedule further proceedings; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

February 4, 2022
Albany, New York

Gary L. Sharpe
U.S. District Judge